IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

KATHLEEN CAHILL COOKER          :
                                :
v.                              :          CIVIL ACTION NO. 21-2667
                                :
MEADOWOOD CORPORATION           :

**McHUGH, J.**                                          **September 20, 2021**

## MEMORANDUM

This is an action against a nursing home brought pro se by an adult child of a deceased

patient.  Plaintiff pleads a personal claim for negligent infliction of emotional distress, and

further asserts a claim for gross negligence, pleading a breach of some duty of care the nursing

home is alleged to have owed directly to her.  As an "alternative" theory of liability, Plaintiff

pleads intentional infliction of emotional distress.  Defendant responds by moving to dismiss for

failure to state a claim, coupled with an argument that any viable claim is time-barred.  Having

carefully reviewed the complaint, and without in any respect discounting the emotional toll

exacted by the death of a parent, Defendant's motion will be granted.

### I.      Factual Allegations

Plaintiff Kathleen Cahill Cooker's father, Harry Thomas Cahill Sr., was admitted to

Defendant Meadowood Corporation's Montgomery County senior living facility in 2013.  He

died on June 11, 2019.  *See* Compl. ¶¶ 1, 7, 9, ECF 1.  Among other medical issues, he suffered

from spasms of the esophagus (known as "achalasia"), which triggered daily vomiting, weight

loss, and dehydration.  *Id.* ¶ 15.  To alleviate these symptoms, Ms. Cooker proposed that her

father receive a peroral endoscopic myotomy.  *Id.* ¶ 16.  Defendant's doctors disagreed with her

assessment, refused to perform the procedure, and allegedly inhibited Plaintiff's efforts to transfer her father to a hospital for treatment.[1]  *Id.* ¶¶ 16, 21.  In addition to purported neglect and rude conduct by staff, Plaintiff also charges that Defendant placed her father in hospice against his wishes and that Defendant's staff administered deadly doses of morphine and the antipsychotic drug Haldol from June 3, 2019 until her father's death on June 11, 2019.  *Id.* ¶ 8. Her father's death certificate lists the first cause of death as "End Stage Alzheimer's," although Ms. Cooker strongly disputes this determination.  *Id.* ¶ 33.

Ms. Cooker's presence and involvement in these events is less than clear.  She claims that she was at her father's bedside, where she observed "significant suffering from the effects of these drugs."  *Id.* ¶ 8.  But she does not specify in her Complaint whether she observed her father receive dosages of morphine or whether she directly observed her father's passing.  Rather, she asserts that her periodic presence at her father's bedside, and Defendant's negligent care more generally, triggered "debilitating emotional distress … including depression, severe headaches, persistent and prolonged sleeplessness, upset stomach, loss of weight and nightmares."  *Id.* ¶ 7.

In support of her claims, Plaintiff cites purported violations of federal statutes and regulations, including the Elder Abuse Prevention and Prosecution Act, and the Nursing Home Reform Act of 1987.

---

[1] It is unclear whether Plaintiff held a valid power of attorney at this time; Ms. Cooker claims that she held a valid medical power of attorney by virtue of an instrument executed April 26, 2019, which she argues superseded an earlier instrument appointing her father's sons. *See* Compl. ¶ 25. Defendant did not honor this instrument, as Defendant's doctor had determined that Plaintiff's father was incompetent at the time he signed it. *Id.* ¶ 26. Ms. Cooker also notes that Defendant's failure to "adequately handle various issues of family variance/dissent in a proper way, resulted in the plaintiff's father's rights being violated on multiple levels and his eventual death." *Id.* ¶ 28.

**II.**      **Legal Standard**

Within the Third Circuit, motions to dismiss under Fed. R. Civ. P. 12(b)(6) are governed

by the well-established standard set forth in *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d

Cir. 2009).

**III.**      **Discussion**

A. Emotional Distress Claims

Plaintiff pleads that her father died on June 11, 2019.  This action was filed on June 10,

2021.  ECF 1.  The two questions raised by Defendant's motion, and whether Plaintiff's

emotional distress claims are time-barred,[2] are inter-related.

As an initial matter, the scope of liability for negligent infliction of emotional distress is

not quite as narrow as the defense suggests.  It has undergone a steady evolution, culminating in

*Toney v. Chester County Hospital*, 961 A.2d 192 (Pa. Super. Ct. 2008), *affirmed* 36 A.3d 83 (Pa.

2011).  It is now the case that Pennsylvania courts recognize four sets of circumstances

potentially giving rise to a claim of negligent infliction of emotional distress: (1) where the

plaintiff observed a traumatic injury to a close family member; (2) where the plaintiff personally

was in the zone of danger; (3) where the plaintiff experienced some physical impact; and (4)

where the defendant had a contractual or fiduciary duty to protect the plaintiff against some form

of emotional distress.  As to all four categories, a plaintiff must show that "defendant owed a

duty of care to the plaintiff, the defendant breached that duty, the breach resulted in injury to the

plaintiff, and the plaintiff suffered an actual loss or damage." *Id.* at 198.

---

[2] A court may grant a Fed. R. Civ. P. 12(b)(6) motion to dismiss on statute of limitations grounds where the complaint is facially noncompliant with the limitations period and the defendant affirmatively raises the defense.  *See Oshiver v. Levin, Fishbein, Sedran & Berman*, 38 F.3d 1380, 1385 n.1 (3d Cir. 1994). The statute of limitations for tort claims in Pennsylvania is two years.  42 Pa. Cons. Stat. Ann. § 5524(7) (Purdon Supp. 1997).

Understandably, Plaintiff does not allege that she experienced a physical impact or that she was in the zone of danger.  As to the remaining two categories recognized by Pennsylvania law, the facts alleged do not support a claim.

*Toney* represents the most expansive approach to liability for negligent infliction of emotional distress under Pennsylvania law.  The plaintiff in *Toney* was a mother who gave birth to a child with "profound physical deformities," including a lack of arms below the elbows and a lack of legs below the knees.  *Id*. at 195.  These abnormalities were detected by pre-birth imaging, but negligently overlooked by physicians who therefore did not emotionally prepare the mother as required by the prevailing standard of care.  These deficits were not the result of birth trauma, or any actions taken by physicians; they developed *in utero.*  Defendants argued that they could not be liable for any emotional shock because the infant's deficits existed independently and did not result from any conduct on their part.  In rejecting this argument, the Superior Court emphasized that the duty arose because of the obligations inherent in the physician-patient relationship, *id.* at 198, and further emphasized the profoundly shocking nature of the mother's experience, which manifested itself in severe physical reactions.  *Id.* at 200.  Here, Plaintiff's allegations fall well short of *Toney.*  She did not have a physician-patient relationship with defendant, and nothing she alleges to have contemporaneously witnessed would rise to the level of the profoundly shocking event experienced by the birth mother in *Toney.*

One of the threshold requirements in *Toney*—the existence of a physician-patient relationship—is consistent with earlier decisions of the Pennsylvania Superior Court.  For example, in *Armstrong v. Paoli Mem. Hosp.*, 633 A.2d 605, 615 (Pa. Super. Ct. 1993), the court *en banc* denied recovery in a case of mistaken identity brought by a woman erroneously notified by a hospital that her husband had been in a serious accident.  The court observed that the

plaintiff "was not a bystander who witnessed an injury to a close family member, nor did Paoli

Memorial Hospital owe her a pre-existing duty of care." *Id.* In *Weiley v. Albert Einstein*

*Medical Center*, 51 A.3d 202, 218 (Pa. Super Ct. 2012), the son of a patient sued for emotional

distress after the hospital negligently handled his father's remains, arguing that the hospital owed

him a fiduciary duty because it was foreseeable to the hospital that he would be affected by its

conduct. The Court refused to recognize a duty, despite the son's allegation that he relied upon

the representations of hospital staff regarding the treatment of his father. *Id.*

Here, the only relationship with Meadowood that Plaintiff has pleaded is an agreement

purportedly endorsed by Mr. Cahill that Plaintiff "will be given any medical and all information

about her father," Compl. ¶25, but such a consent to disclosure of information does not support

the same type of duty a health care provider owes to a patient.

The remaining issue is whether Ms. Cooker can proceed on a bystander theory based

upon events she observed during her father's care.

In the context of medical malpractice, to recover as a bystander for negligent infliction of

emotional distress, the plaintiff must have witnessed a "discrete and identifiable" traumatic

event. *Sonlin ex rel. Sonlin v. Abington Mem'l Hosp.,* 748 A.2d 213, 217 (Pa. Super. Ct. 2000).

For example, in *Turner v. Medical Center, Beaver, PA, Inc.,* 686 A.2d 830 (Pa. Super. Ct. 1996),

a woman who accompanied her sister to the hospital and witnessed her having to deliver a

stillborn infant without medical assistance stated a claim. The prevailing rule is that the plaintiff

must contemporaneously witness the traumatic event giving rise to the claim. *Sonlin,* 748 A.2d

at 218 (denying recovery where amputation of patient's leg occurred eight days after the

purported negligence). *Accord Bloom v. Dubois Reg'l Med. Ctr.,* 597 A.2d 671, 682 (Pa. Super.

Ct. 1991) ("To recover the plaintiff must have observed the defendant traumatically inflicting the

harm on the plaintiff's relative, with no buffer of time or space to soften the blow"); *Halliday v. Beltz*, 514 A.2d 906, 908 (Pa. Super. Ct. 1986) (finding complaint failed to meet the "sensory and contemporaneous observance of accident" requirement where plaintiffs were in the hospital during decedent's surgery and post-op emergency remedial measures but did not actually view the allegedly negligent surgery); *Tackett v. Encke*, 509 A.2d 1310, 1312 (Pa. Super. Ct. 1986) (denying recovery where plaintiff mother observed her son's ongoing medical issues due to alleged negligence over time but did not witness a "discrete and identifiable traumatic event."). The sole exception is *Love v. Cramer*, 606 A.2d 1175, 1177 (Pa. Super. Ct. 1992), where the court allowed recovery for a daughter who attended multiple medical visits, and then was present for her mother's fatal heart attack, which did not occur contemporaneously with the negligence alleged.  To that extent, *Love* is inconsistent with the prevailing weight of authority in Pennsylvania.  It is also distinguishable, as Plaintiff has not pleaded that she was present when her father died.[3]

The substantive elements of the claim also support Defendant's position that Plaintiff's claims are time-barred. The requirement of a discrete event fixes the date on which the claim would have accrued, and the statute of limitations would have begun to run.  *Fine v. Checcio*, 870 A.2d 850 (Pa. 2005).  Given the date that Plaintiff filed suit, the statute of limitations for negligent infliction of emotional distress has expired, except for events occurring on June 10th and 11th of 2019.  As it stands, the Complaint fails to plead any conduct by Defendant or event witnessed by Plaintiff that would support recovery.

---

[3] The Complaint refers only to Plaintiff's emotional distress upon reading her father's death certificate. Compl. ¶33.

As an alternative theory of recovery, Ms. Cooker pleads intentional infliction of emotional distress.  Although such claims are often brought, and although numerous Pennsylvania decisions have discussed the doctrine, it is difficult to find a Pennsylvania case where the facts alleged were deemed sufficient.[4]  The seminal case is *Kazatsky v. King David Memorial Park, Inc.*, 527 A.2d 988, 991 (Pa. 1987), where the Pennsylvania Supreme Court discussed the principles set forth in section 46 of the Restatement (Second) but found the facts insufficient to state a claim.  *Id.* at 992.  In subsequent opinions, Pennsylvania appellate courts have also cited section 46.  *See, e.g.*, *Reardon v. Allegheny College*, 926 A.2d 477, 487-88 (Pa. Super. Ct. 2007) (noting that the Pennsylvania Supreme Court had not formally adopted Restatement Second of Torts § 46 but applying § 46(1) as the appropriate legal standard to be applied in reviewing a claim for intentional infliction of emotional distress).  The Third Circuit has predicted that Pennsylvania will recognize such a tort.  *See Pavlik v. Lane Ltd/ Tobacco Exporters Int'l*, 135 F.3d 876, 890 (3d Cir. 1998).  The Pennsylvania Supreme Court seems to have tacitly recognized the existence of the tort in *Hoy v. Angelone,* 554 Pa. 134, 151, 720 A.2d 745, 754 (1998)*.*  In doing so, however, it emphasized the narrow scope of liability:

> "[t]he conduct must be so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized society." Described another way, "[i]t has not been enough that the defendant has acted with intent which is tortious or even criminal, or that he has intended to inflict emotional distress, or even that his conduct has been characterized by 'malice,' or a degree of aggravation that would entitle the plaintiff to punitive damages for another tort." Restatement (Second) of Torts §46, comment d.

*Id.* (internal citations omitted).

---

[4] *See Kelly v. Jones,* 148 F. Supp.3d 395, 405 n.2 (E.D. Pa. 2015) (describing intentional infliction as a "hypothetical tort" in light of the Pennsylvania Supreme Court's continued failure to recognize facts sufficient to state a claim).

Here, Plaintiff at most pleads a series of negligent acts, and although she communicates her indignation about Defendant's conduct, in no respect would the facts here support a claim for intentional infliction of emotional distress.  The Superior Court explicitly rejected a similar claim in *Kelly v. Resource Housing of America,* 615 A.2d 423 (Pa. Super. Ct. 1992).  There, the plaintiff had admitted her mother to a nursing home and following her mother's death, brought a claim for infliction of emotional distress on the ground that the nursing home had provided inadequate medical treatment.  *Id.* at 424.  The court reasoned that defendant's conduct was not outrageous, as required to show IIED, because the "services by nursing home personnel were being rendered in the normal course of treating and caring for appellant's mother." *Id.* at 426.  Given the strict standard for claims alleging intentional infliction of emotional distress, Plaintiff fails to state a claim, and as noted above, any such claim would need to fall within a two-day period to withstand the statute of limitations.

### B.  Gross Negligence Claim

Plaintiff also brings a claim for "gross negligence."  Importantly, the claim is not a derivative one on behalf of her late father, but a direct claim where she asserts that Meadowood owed a duty of care personally to her.  The threshold requirement for any recovery for common law negligence is the existence of a duty.  *Matthews v. Konieczny,* 527 A.2d 508 (Pa. 1987). Plaintiff's Complaint cites statues setting forth duties owed to nursing home patients, and her factual allegations are grounded in the care rendered to her father.  As *Armstrong, Weiley,* and *Kelly* make clear, under Pennsylvania law, health care providers owe a duty of care to patients and residents, but that duty does not extend to family members.  Plaintiff has no authority for the proposition that Meadowood owed her, as opposed to her father, a duty of care in this context.

Except in highly specific circumstances, Pennsylvania courts have been reluctant to extend the duties of health care providers to non-patients.  For example, recovery has been allowed where a physician's negligence led to transmission of a contagious disease.  *Troxel v. A.I. Dupont Institute*, 675 A.2d 314, 323 (Pa. Super. Ct. 1996).  Similarly, courts have recognized that a duty to warn exists in psychiatric cases where potential victims are readily identifiable.  *Maas v. UPMC Presbyterian Shadyside*, 234 A.3d 427, 439 (Pa. 2020).  In contrast, what Plaintiff advances here would be a wholesale expansion of liability to every family member of a patient, a result that finds no support in Pennsylvania law.  And it is not the place of a federal district judge to decree such a radical change in state law.

## IV.    Conclusion

For the reasons set forth above, Defendant's Motion to Dismiss will be granted. Plaintiff's claim for negligent infliction of emotional distress is dismissed without prejudice, and she will be granted leave to amend if she can allege facts sufficient to support a claim within the two-day window not barred by the statute of limitations.  Plaintiff's claims for intentional infliction of emotional distress and claims sounding in negligence are dismissed with prejudice, as amendment would be futile.  An appropriate order follows.


　　　　　　　　　　　　　　　　　　  /s/ Gerald Austin McHugh
　　　　　　　　　　　　　　　　　　United States District Judge